IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–01956–WYD–KMT

DANY L. CLEMENTSON,

      Plaintiff,

v.

COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation,
COUNTRYWIDE HOME LOANS, INC., a New York corporation,
ANGELO MOZILO, an individual,
DAVID SAMBOL, an individual,
BANK OF AMERICA CORPORATION, a Delaware corporation, as successor in interest to
COUNTRYWIDE FINANCIAL CORPORATION, and
DOES 1-25, inclusive,

      Defendants.

_____

**ORDER and
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Kathleen M. Tafoya**

      This matter is before the court on Defendant Bank of America's (hereinafter "BAC")

"Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 11

[hereinafter "Mot."]), filed September 7, 2010.  "Plaintiff's Response in Opposition to

Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss the Complaint" (Doc. No. 23

[hereinafter "Resp."]) was filed on October 25, 2010, and "Defendant's Reply in Support of its

Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 28 [hereinafter

"Reply"]) was filed on November 4, 2010.

Also pending is "Plaintiff's Opposed Motion for Leave to File Surreply." (Doc. No. 37, filed Dec. 10, 2010.) Because a surreply would not be helpful to this court's determination, this motion is DENIED.

### STATEMENT OF THE CASE

The following facts are taken primarily from Plaintiff's "Civil Complaint" (Doc. No. 1-1, filed August 17, 2010 [hereinafter "Compl."]), as well as the parties' submissions with respect to this Recommendation. In 2001, Plaintiff and his wife bought a home in Littleton, Colorado. (Compl. ¶¶ 14, 80.) In March of 2003, Plaintiff's wife suffered a brain aneurysm while recovering from a surgical procedure. (*Id.* ¶ 81.) Although Plaintiff's wife survived, the amount of brain damage suffered was severe and debilitating. (*Id.*) Consequently, she has remained in a nursing facility, in a vegetative state, for the past seven years. (*Id.*) In addition to the obvious emotional hardship, Plaintiff's wife's continued care, as well as the loss of her income, caused severe financial hardship to Plaintiff . (*Id.*)

Sometime in the summer of 2003, Plaintiff was approached by an unnamed individual, who eventually inquired as to whether Plaintiff was interested in refinancing his home in order to lower his monthly payment obligations. (*Id.* ¶¶ 84-85.) Because of his wife's circumstances, Plaintiff had indeed contemplated refinancing; consequently, he submitted an application for a home loan with this unnamed individual and his brokerage firm. (*Id.* ¶ 85.)

In his application, Plaintiff initially sought a conventional, 30-year, fixed-rate mortgage. (*Id.* ¶ 86.) Nevertheless, as the time for closing on Plaintiff's refinancing neared, the unnamed individual explained that the brokerage firm was setting up an "interest only, adjustable rate"

mortgage for Plaintiff.  (*Id.* ¶ 87.)  Although Plaintiff initially objected to "a type of mortgage he knew nothing about and the appearance of PMI (mortgage insurance), and a pre-payment penalty," the broker and his firm continued to steer Plaintiff towards the interest only, adjustable rate mortgage, primarily because, "due to the situation with his wife[,] [] a conventional 30 yr. Fixed rate [sic] loan was probably not going to be forthcoming."  (*Id.* ¶ 88.)  At closing, Plaintiff was also required to pay $1,000 to remove a pre-payment penalty from the note, even though the "closing costs now exceeded $10,000 for the refinancing of an existing home loan and not the purchase of a new home."  (*Id.* ¶ 89.)

Plaintiff alleges that he later learned that the entire scenario played out by the brokers was a well-rehearsed script "with only the slightest of changes to the script, used to adjust the scheme to fit the borrower present at the time."  (*Id.* ¶ 90.)  In other words, Plaintiff alleges that, "despite the individuals [sic] credit scores, past and present payment history, income, equity, value of property versus [the] amount of the loan sought, underwriting standards, and any one of a dozen other factors," the outcome was going to be pretty much the same for all borrowers—"the borrower was going to end up with one if not two of the riskiest loan products on the market at that time, without regard for the borrowers [sic] ability to understand or even afford the loans."  (*Id.*)

As time passed with the new mortgage in place, the interest rate on Plaintiff's mortgage increased, and ultimately, in October 2006, Plaintiff found himself behind on his mortgage payments.  (*Id.* ¶¶ 93-97.)  Plaintiff contacted Defendants Countrywide Home Loans, Inc. and Countrywide Financial Corporation (hereinafter "Countrywide") to inform them that "he had two

payments in hand, and was prepared to bring his mortgage current." (*Id.* ¶ 98.) Nevertheless, instead of accepting Plaintiff's payments, Countrywide's customer service representative asked Plaintiff if he had considered Countrywide's "Work-Out" program. (*Id.*) According to the customer service representative, the benefits of the "Work Out" program could be "(1) not having to make both payments that plaintiff was tendering at the time by moving one or both to the end of the note, (2) the possible restructuring of the mortgage through a modification of some sort, [and] (3) the restructuring of the type of loan the plaintiff had, a refinance into a fixed rate rather than the ARM that plaintiff then had, or possibly something else." (*Id.*)

Plaintiff "took this to be an agreement with implied covenants upon his acceptance of the offer and his fulfillment of the considerations required of him." (*Id.* ¶ 99.) The considerations expected of Plaintiff "were the documents and written statements required to be forwarded to [Countrywide's] Work-Out Department . . . within as little time as possible." (*Id.*) Consequently, Plaintiff gathered the required documents, which he forwarded to Countrywide's Work-Out Department within ten days. (*Id.*)

Over the next month, Plaintiff became concerned with the status of his application. (*Id.* ¶ 100.) Specifically, each time he contacted Countrywide, he was unable to speak with anyone in Countrywide's Work-Out Department; instead, he was only able to speak to representatives from Countrywide's Customer Service Department. (*Id.* ¶¶ 100-103.) Ultimately, Plaintiff informed a customer service representative that he was prepared to make three payments towards his mortgage, which would have brought his mortgage current. (*Id.* ¶ 103.) Plaintiff was told that Countrywide would not accept any payments from Plaintiff. The representative told Plaintiff

that once a mortgage was sent to the Work-Out Department for review, the account was frozen. (*Id.* ¶ 104).

Shortly after the second time Plaintiff attempted to bring his mortgage current, while Plaintiff's Work-Out application was still under consideration, Defendants began foreclosure proceedings against Plaintiff's property.  (*Id.* ¶ 105.)  The first foreclosure sale was scheduled for February 21, 2007.  (*Id.*)  Plaintiff continued to attempt to contact Countrywide's Work-Out Department to no avail.  (*Id.* ¶¶ 105-06.)  Only a few days before the first scheduled foreclosure sale, Plaintiff spoke with a representative from Countrywide's Work-Out Department, who told him that the foreclosure date would be postponed for one month, while the representative "worked at coming up with an acceptable solution for a work-out agreement between plaintiff and the defendants."  (*Id.* ¶¶ 107-09.)

After another largely incommunicado period between Plaintiff and Countrywide's Work-Out Department, Plaintiff filed for Chapter 7 bankruptcy in federal court on March 14, 2007. (Mot. at 3; Ex. A.)  Plaintiff was granted a discharge by the bankruptcy court on June 27, 2007. (*Id.* at 3; Ex. B.)  On October 5, 2009, the bankruptcy trustee filed a final report representing that Plaintiff's estate had been fully administered.  (*Id.* at 3; Ex. C.)  On November 20, 2009, the bankruptcy court accepted the trustee's report and officially closed Plaintiff's Chapter 7 bankruptcy case.  (*Id.* at 3-4; Ex. D.)

While the bankruptcy case was still pending, Plaintiff, with the help of a non-profit private agency, again sought to apply for a home loan modification with Defendants.  (Compl. ¶ 118.)  On October 13, 2009, Plaintiff and a counselor from the private agency placed a

conference call to Countrywide's loss mitigation department.  (*Id.* ¶¶ 118-19.)  The

representative contacted at Countrywide informed Plaintiff that his new payments, starting

November 1, 2009, would be approximately $3,000 per month and that Plaintiff did not qualify

for any modification program.  (*Id.* ¶ 119.) Subsequently, the foreclosure process began for a

second time on Plaintiff's home.  (*Id.* ¶ 121.)

Based on the above events, Plaintiff alleges (1) violations of the Colorado Consumer

Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-101, *et seq.*, (2) fraud resulting in theft, (3)

conspiracy to commit fraud resulting in theft, (4) tortious acts resulting in personal injury, (5)

breach of contract, (6) breach of the implied covenant of good faith and fair dealing, and (7)

violations of the Colorado Organized Crime and Control Act ("COCCA"), Colo Rev. Stat. §§

18-17-101, *et. seq.*  (*Id.* ¶¶ 136-58.)

## LEGAL STANDARDS

### 1.    Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991)

(citations omitted).  A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

**2.      *Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotations omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court

7

identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 1949-51; *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998) (a court "need not accept conclusory allegations without supporting factual averments"). Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citation omitted).

## ANALYSIS

In its Motion, BAC argues that Plaintiff's Complaint should be dismissed because (1) Plaintiff lacks standing to bring the present action; (2) Plaintiff's claims are barred by the applicable statutes of limitation; and (3) Plaintiff's claims each fail to state a plausible claim for relief.

A.      *Standing*

BAC first asserts that because Plaintiff's present claims were not scheduled in his bankruptcy petition, and therefore were neither administered nor abandoned, the claims are property of the bankruptcy estate.  (Mot. at 5-10.)  As a consequence, BAC maintains that Plaintiff does not have standing to pursue these claims, pursuant to Federal Rule of Civil Procedure 17(a).  (*Id.*)  Plaintiff disagrees with BAC's position.

Federal Rule of Civil Procedure 17(a)(1) requires that "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  Once a party files for bankruptcy, all "legal or equitable interests," become the property of the bankruptcy estate, and the bankruptcy trustee, not the party, becomes the real party in interest with respect to the claims.  11 U.S.C. § 541(a).  A debtor's "legal or equitable interests" include "[a] debtor's potential causes of action."  *Smith v. Rockett*, 522 F.3d 1080, 1084 (10th Cir. 2008); *see also Barger v. City of Cartersville*, 348 F.3d 1289, 1291 (11th Cir. 2003) ("[P]roperty of the bankruptcy estate includes all potential causes of action that exist at the time petitioner files for bankruptcy"); *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) ("Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.").

As a consequence, "[t]he bankruptcy code imposes a duty upon a debtor to disclose all assets, including contingent and unliquidated claims."  *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007) (citing 11 U.S.C. § 521(1)).  "That duty encompasses disclosure of all legal claims and causes of action, pending or potential, which a debtor might

have." *Id.* (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)). When a bankruptcy action is closed, "'properly scheduled' assets not otherwise administered revert 'to the debtor through abandonment under 11 U.S.C. § 554(c).'" *Clark v. Trailiner Corp.*, No. 00-5020, 2000 WL 1694299, at *1 (10th Cir. Nov. 13, 2000) (unpublished) (quoting *Hutchins v. IRS*, 67 F.3d 40, 43 (3d Cir. 1995)). However, "[a]ssets not properly scheduled remain property of the bankruptcy estate." *Id.* (citing 11 U.S.C. § 554(d)). As a result, the debtor loses all rights to enforce any unscheduled legal claims in his own name. *Id.* (citing *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir. 1991)); *see also Vreugdenhill*, 950 F.2d at 525-26 (concluding that trustee necessarily did not abandon potential state law claims that were not scheduled at any point of the bankruptcy case).

Additionally, a cause of action that accrues after the date of the bankruptcy filing may still be considered part of the bankruptcy estate where the claim "is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start." *Segal v. Rochelle*, 382 U.S. 375, 380 (1966); *see also In re Alvarez*, 224 F.3d 1273, 1279 (11th Cir. 2000) (finding that malpractice claim was sufficiently rooted in the plaintiff's pre-bankruptcy past because the attorney-client relationship giving rise to the claim was formed pre-petition and the alleged harm was suffered near or at the time of the bankruptcy filing).

In spite of this, a plaintiff ordinarily will remain the real party in interest with respect to claims for injunctive relief. *Wilkerson v. Schirmer*, 04-cv-00258-WDM-MEH, 2009 WL 2766716, at *1 (D. Colo. Aug 26, 2009) (unpublished); *see also Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1273 n.4 (11th Cir. 2004) (noting that a debtor would remain a plaintiff for a

cause of action seeking injunctive relief); *EEOC v. Outback Steak House, Inc.*, 06-cv-1935-EWN-KLM, 2008 WL 3992171, at *3 (D. Colo. Aug. 20, 2008) (unpublished) (clarifying that an order granting the defendant's motion to dismiss because the bankruptcy trustee was the real party in interest only applied to monetary claims and did not dismiss the injunctive claims). Indeed, because "[t]he trustee and creditors are interested [only] in the debtor's property that can add anything of value to the estate," the important and necessary reasons for requiring that the trustee bring unscheduled claims for monetary relief do not apply to claims for injunctive relief. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1289 (11th Cir. 2002).

As a threshold procedural matter, the court notes that BAC has attached to its Motion various documents from Plaintiff's Chapter 7 Bankruptcy proceeding. (Mot. Ex. A-D.)  Because these court documents relate to threshold matters, rather than convert BAC's Motion to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d), the court finds it appropriate to take judicial notice of the facts contained in these documents.  *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006) ("facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment").[1]

---

[1]  "Judicial notice is an adjudicative device that alleviates the parties' evidentiary duties at trial, serving as a substitute for the conventional method of taking evidence to establish facts." *York v. AT&T*, 95 F.3d 948, 958 (10th Cir. 1996).  Judicial notice "replaces the evidentiary procedure that would otherwise be necessary to establish 'adjudicative fact[s]' that are generally known or 'capable of accurate and ready determination' by resort to other reliable sources." *Id.* (quoting Fed. R. Evid. 201(b)).

Turning to BAC's substantive arguments, the court finds that each of Plaintiff's claims primarily accrued prior to the filing of his bankruptcy case.  Indeed, the sequence of events outlined in Plaintiff's Complaint clearly demonstrates that nearly all of Defendants' alleged conduct took place before Plaintiff filed his Chapter 7 bankruptcy petition.  (Compl. ¶¶ 80-109.) Plaintiff himself admits that he "was aware of the fact that something improper at best or illegal at worst, had or was taking place" in November 2006 more than three-and-a-half months before he filed his bankruptcy petition on March 14, 2007.  (*Id.* ¶ 131.)

Only a modicum of the events outlined in Plaintiff's Complaint occurred after Plaintiff filed his Chapter 7 bankruptcy petition.  More specifically, the only post-petition events outlined in Plaintiff's Complaint involve Countrywide's loss mitigation department's denial of Plaintiff's renewed attempt to obtain a loan modification.  (*Id.* ¶¶ 118-120.)  The court finds that these events represented yet another seemingly futile attempt by Plaintiff to obtain a work-out modification of his mortgage, very similar to his pre-petition attempts to modify his mortgage. Consequently, the court finds that even though these events occurred after Plaintiff filed his Chapter 7 bankruptcy petition, they are "sufficiently rooted in his pre-bankruptcy past" to be considered property of the bankruptcy estate.  *Segal*, 382 U.S. at 380.

The court also finds that Plaintiff failed to schedule any of the claims asserted in his Complaint in his bankruptcy petition.  (*See* Mot., Ex. A at 24-26.)  Indeed, Plaintiff does not dispute that he failed to schedule the claims asserted in his Complaint in his bankruptcy petition. (*See* Resp.)

Instead, Plaintiff first argues that he "does, in fact, own the causes of action" asserted in this case because he properly scheduled his home, which is subject to the mortgage underlying his present claims, and his home is exempted from his bankruptcy estate, pursuant to the homestead exemption outlined at Colo. Rev. Stat. § 38-41-201(1)(a).  (Resp. at 2.)  However, the court finds that "[e]ven if Plaintiff were correct . . . , the fact that [he] may be able to qualify for an exemption with respect to some of the potential proceeds from this action does not render him the real party in interest."  *Gilman v. Target Corp.*, 09-cv-00669-ZLW-KMT, 2009 WL 4611474, at *2 (D. Colo. Dec. 1, 2009) (unpublished).

Next, Plaintiff argues that he is the real party in interest because "he knew of no causes of action at the time of the Chapter 7 Bankruptcy filing, but rather while believing he had been wronged[,] plaintiff was unaware, at the time, that these wrongs could or would rise to a position supporting any cause of action."  (Resp. at 3.)  However, this position is clearly at odds with Plaintiff's own admission that he was "aware that something improper at best or illegal at worse" was taking place in November 2006.  (Compl. ¶ 131.)  Moreover, the court finds that this argument essentially amounts to a position that Plaintiff's failure to schedule his present claims was inadvertent or a mistake.  The Tenth Circuit, addressing a question of judicial estoppel, rejected that a plaintiff who inadvertently or mistakenly fails to schedule potential claims may nevertheless bring those claims in a subsequent action.  *Eastman*, 493 F.3d at 1157-60 (further noting that "[a] large portion of debtors who file for chapter 7 bankruptcy surely are as 'unsophisticated' and 'unschooled' [in bankruptcy law] as [the plaintiff there], yet have little difficulty fully disclosing their financial condition to the bankruptcy court").

Thus, altogether, the court finds that all of the events underlying each of Plaintiff's claims either accrued prior to the filing of his Chapter 7 bankruptcy petition, or were sufficiently rooted in the pre-bankruptcy past to justify their inclusion in the bankruptcy estate. Because Plaintiff failed to disclose these potential causes of action in his bankruptcy petition, these claims remain property of the bankruptcy estate. Therefore, the bankruptcy trustee, and not Plaintiff, is the real party in interest with respect to his claims for monetary relief. Accordingly, the court finds that BAC's Motion is properly granted to the extent that it seeks to dismiss Plaintiff's claims for monetary relief because he lacks standing to pursue these claims.

However, to the extent that Plaintiff seeks injunctive relief, the court finds that Plaintiff remains the real party in interest with respect to these claims. *Wilkerson*, 2009 WL 2766716, at *1. Accordingly, the court finds that BAC's Motion is properly denied to the extent that it seeks to dismiss Plaintiff's claims for injunctive relief.

**B.      *Statute of Limitations***

BAC next argues that Plaintiff's claims, whether pursued by the bankruptcy trustee or Plaintiff himself, are barred by the applicable statutes of limitations. (Mot. at 10-13.) Plaintiff contends that the statutes of limitations applicable to his claims were tolled during the pendency of his bankruptcy case, and that consequently, his claims are timely. (Compl. ¶ 132.)

"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of limitations defense only if it appears beyond a doubt that Plaintiff[] can prove no set of facts that toll the statute." *Matthews v. Wiley*, No. 09-cv-00978-PAB-CBS, 2010 WL 3703357, at *5 (D. Colo. Sep. 13, 2010) (citing *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13

14

(11th Cir. 2005)); *see also Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1310 n.3 (10th Cir. 1999) (noting "that Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with the limitations period); *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) ("While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute.").

The following statutes of limitations apply to Plaintiff's claims. Plaintiff's first claim, alleging violations of the CCPA, accrues on the date that the consumer "should have discovered the occurrence of the false, misleading, or deceptive act or practice," and a three-year statute of limitations then begins to run. Colo. Rev. Stat. § 6-1-115; *see also Stiff v. BilDen Homes, Inc.*, 88 P.3d 639, 642 (Colo. App. 2003). Plaintiff's second claim, alleging fraud resulting in theft, third claim, alleging conspiracy to commit fraud resulting in theft, fifth claim, alleging breach of contract, and sixth claim, alleging breach of the implied covenant of good faith and fair dealing claims, "shall be commenced within three years after the cause of action accrues, and not thereafter." Colo. Rev. Stat. § 13-80-101(1)(a), (c). Plaintiff's fourth claim, alleging tortious acts resulting in personal injury, "shall be commenced within two years after the cause of action accrues, and not thereafter." Colo. Rev. Stat. § 13-80-102(1)(a). Finally, Plaintiff's seventh claim, alleging violations of the COCCA, is subject to a five-year limitations period, and accrues "at such time as the alleged offense or conduct giving rise to the claim was discovered." Colo. Rev. Stat. § 13-80-103(1)(d), (2).

15

However, when claims are subject to the control of the bankruptcy trustee, the statute of limitations calculus is slightly modified.  Indeed, as BAC acknowledges, "a bankruptcy court has the power to reopen the bankruptcy to administer previously unadministered assets . . . and the bankruptcy trustee retains capacity to bring suit . . . ."  (Mot. at 10.)

Section 108(a) of the Bankruptcy Code provides, in pertinent part:

(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of–

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) two years after the order for relief.

11 U.S.C. § 108(a).  In a typical voluntary bankruptcy proceeding under Chapter 7, the voluntary petition itself constitutes an order for relief.  11 U.S.C. § 301(b); *see also Tenn. Student Assistance Corp. v. Hood,* 541 U.S. 440, 447 (2004) (citing 11 U.S.C. § 301).  Accordingly, where claims belong to the bankruptcy estate—as is the case here with respect to Plaintiff's claims for monetary relief—the bankruptcy trustee must bring such claims before the later of the (1) end of the applicable limitations period, or (2) two years after the Chapter 7 bankruptcy petition was filed.  *See* 11 U.S.C. § 108(a).

In his Complaint, Plaintiff admits that he "was aware of the fact that something improper at best or illegal at worst, had or was taking place" in November 2006.  (Compl. ¶ 131.)  Indeed, the sequence of events outlined in Plaintiff's Complaint make clear that the primary allegations of Plaintiff's Complaint took place, at the very latest, in March 2007, when Plaintiff was forced

16

to file for bankruptcy because Defendants had not yet offered him a work-out modification of his mortgage.  (Compl. ¶¶ 80-117.)

Plaintiff's Complaint was filed in state court on July 19, 2010 (*see* Compl.), more than three years after the primary allegations of Plaintiff's Complaint occurred.  Accordingly, regardless of whether Plaintiff's claims are asserted by Plaintiff or the bankruptcy trustee, the two-year statute of limitations applicable to Plaintiff's fourth claim, Colo. Rev. Stat. § 13-80-102(1)(a), the three-year statute of limitations applicable to Plaintiff's first claim, Colo. Rev. Stat. § 6-1-115, and the three-year statute of limitations applicable to Plaintiff's second, third, fifth, and sixth claims, Colo. Rev. Stat. § 13-80-101(1)(a), (c), clearly expired before Plaintiff filed his Complaint.

Additionally, to the extent that Section 108(a) of the Bankruptcy Code permits the bankruptcy trustee to assert claims within "two years after the order of relief," the court finds that this limitations period likewise expired before Plaintiff filed his Complaint.  More specifically, Plaintiff filed his voluntary Chapter 7 bankruptcy petition on March 14, 2007. (Mot. Ex. A.)  Because the bankruptcy petition constitutes the order for relief in voluntary bankruptcy proceedings under Chapter 7, 11 U.S.C. § 301(b), the bankruptcy trustee had until March 14, 2009 to file any claims otherwise barred by the applicable statute of limitations. Because Plaintiff's Complaint was not filed until July 2010, the alternative limitations period outlined in Section 108(a)(2) likewise expired prior to the filing of Plaintiff's Complaint. Therefore Section 108(a)(2) does not salvage any of Plaintiff's otherwise-barred claims.

17

Plaintiff appears to concede that the statute of limitations applicable to his claims had expired before he filed his Complaint; nevertheless, he maintains that the relevant statutes of limitations were tolled while the Chapter 7 bankruptcy proceedings were pending.  (Compl. ¶ 132.)  "As an affirmative defense, a statute of limitations may be subject to certain defenses such as waiver, estoppel, or equitable tolling."  *Matthews*, 2010 WL 3703357, at \*5 (citing *Rotella v. Wood*, 528 U.S. 549, 560 (2000)) (federal statutes of limitations "are generally subject to equitable principles of tolling").  Equitable tolling, however, represents an "'exception, not the rule.'"  *Id.* (quoting *Rotella*, 528 U.S. at 561).  Thus, the Plaintiff bears the burden of establishing a basis for tolling the limitations period.  *See id.*

Plaintiff does not point to, and the court otherwise cannot find, any case or other authority suggesting that the statute of limitations for claims accruing prior to the filing of a Chapter 7 bankruptcy petition are tolled during the pendency of the bankruptcy proceedings.  Instead, by allowing a bankruptcy trustee to pursue claims within two years after the order of relief, regardless of whether the applicable statute of limitations have run, Section 108(a) of the Bankruptcy Code suggests just the opposite—that applicable statutes of limitations continue to run while a bankruptcy proceeding is pending.  *See* 11 U.S.C. § 108(a)(2).

Plaintiff also appears to argue that the "continuing violation" doctrine should save his claims.  (Resp. at 3.)  More specifically, Plaintiff appears to argue that because some of the allegations of his Complaint occurred in October 2009, which is within all of the applicable limitations periods outlined above, his claims should be saved.  (*See id.*)  However, Colorado law limits the application of the "continuing violation" doctrine to employment discrimination

18

cases. *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 405 (Colo. App. 2000). Therefore, because Plaintiff's allegations that Defendants refused to permit a work-out modification in October 2009 (Compl. ¶¶ 118-121) are merely cumulative of Plaintiff's pre-existing belief that Defendants' failure to consider his work-out application meant "something actionable had, or was taking place" (*id.* ¶¶ 131), they do not save his claims from being time-barred.

Although the court finds the majority of Plaintiff's claims are barred by the applicable statute of limitations, Plaintiff's seventh claim, alleging violations of the COCCA, is not time-barred. BAC argues that if Plaintiff's seventh claim accrued on October 1, 2003, when Plaintiff closed on the transaction that refinanced his mortgage, the applicable five-year statute of limitations period found at Colo. Rev. Stat. § 13-80-103(1)(d) expired before Plaintiff filed his Complaint. (Mot. at 11). However, BAC concedes that if Plaintiff's seventh claim accrued in November 2006, as Plaintiff argues, then the five-year statute of limitations had not expired by the time Plaintiff filed his Complaint. (Mot at 12.)

The court finds that the issue of when Plaintiff's seventh claim accrued is not clear from the face of the Complaint. Accordingly, although BAC makes a colorable argument that this claim accrued in October 2003, the court finds that dismissal of Plaintiff's seventh claim on grounds that the statute of limitations expired would be improper at this juncture. *Bullington*, 186 F.3d at 1310 n.3 (dismissing a claim on the basis of a statute of limitations defense, under Fed. R. Civ. P. 12(b)(6) is only proper where that defense is clear from the face of the complaint).

Altogether, to the extent that BAC seeks to dismiss Plaintiff's first, second, third, fourth, fifth, and sixth claims on grounds that the applicable statutes of limitations expired before Plaintiff filed his Complaint, the court finds that BAC's Motion is properly granted.  However, to the extent BAC seeks to dismiss Plaintiff's seventh claim because the applicable statute of limitations expired before Plaintiff filed his Complaint, the court finds that BAC's Motion is properly denied.

### C.      Failure to State a Claim

Plaintiff's only remaining claim alleges violations of the COCCA.  BAC argues that "Plaintiff's Complaint fails to plead plausible facts that would lead the Court to believe that BAC committed a pattern of racketeering activity in entering into a typical loan transaction with Plaintiff."  (Mot. at 13.)

To state a claim for any of the prohibited activities of COCCA, Colo. Rev. Stat. § 18-17-104(1)-(4), amongst other elements, Plaintiff must identify "two criminal predicate acts that are related to the conduct of the enterprise."  *Brooks v. Bank of Boulder*, 911 F. Supp. 470, 474 (D. Colo. 1996).

Pursuant to his seventh claim, the only act that Plaintiff specifically alleges contributed to Defendants' "illegal and common enterprise" was the sale "of its defective mortgage products" to Plaintiff.  However, Plaintiff fails to allege how the sale of one of Defendants' "defective mortgage products" amounted to conduct defined as "racketeering activity" under 18 U.S.C. § 1961, or a "violation of the . . . provisions of the Colorado statutes" outlined at Colo. Rev. Stat. § 18-17-103(5)(b).  Moreover, even if the court were to find that Defendants' sale "of its defective

mortgage products" to Plaintiff could constitute a criminal predicate act, Plaintiff makes only conclusory allegations that Defendants committed a "second predicate act, and numerous other predicate acts, occurr[ing] sometime thereafter during the proceeding years."  (Compl. ¶ 158(2).) Accordingly, because Plaintiff fails to allege two criminal predicate acts in furtherance of Defendants' "illegal and common enterprise," the court finds that Plaintiff fails to state a plausible claim for relief.  *Iqbal*, ___ U.S. ___, 129 S. Ct. at 1950.  Therefore, to the extent that BAC seeks to dismiss Plaintiff's seventh claim for failure to state a claim for relief, the court finds that BAC's Motion is properly granted.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS** that BAC's "Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 11) be **GRANTED in part** and **DENIED in part** as follows

To the extent that BAC seeks to dismiss Plaintiff's Complaint on grounds that Plaintiff is not the real party in interest, pursuant to Fed. R. Civ. P. 17(a), the court recommends that BAC's Motion be **GRANTED** with respect to Plaintiff's claims for monetary relief, and **DENIED** with respect to his claims for injunctive relief.

To the extent that BAC seeks to dismiss Plaintiff's Complaint on grounds that the applicable statutes of limitations expired before Plaintiff filed his Complaint, the court recommends that BAC's Motion be **GRANTED** with respect to Plaintiff's first, second, third, fourth, fifth, and sixth claims, and **DENIED** with respect to his seventh claim.

To the extent that BAC seeks to dismiss Plaintiff's Complaint on grounds that Plaintiff's

seventh claim fails to state a plausible claim for relief, the court recommends that BAC's Motion

be **GRANTED**.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of January, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge